RUTH HEAVER, Plaintiff-Appellant, *v.* DELBERT WARD, Defendant-Appellee.

Second District   No. 77-547

Opinion filed February 7, 1979.

Robert J. Hauser and Richard J. Smith, both of Sullivan, Smith & Hauser, of Waukegan, for appellant.

Edward A. Puisis, of Hall, Meyer, Fisher, Holmberg & Snook, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Plaintiff, Ruth Heaver, brought suit against defendant, Delbert Ward, and another party, David Hyden, for injuries sustained in an automobile accident. Mr. Hyden was dismissed from the case before its conclusion. The jury returned a verdict in favor of the defendant Ward on July 19, 1977.

On July 20, 1977, the trial court, having been informed of allegedly improper activities on the part of jurors, interviewed two jurors, John F. Brookman and James W. Van Cleave.

The trial court entered judgment on the jury's verdict on August 1, 1977. On August 2, 1977, plaintiff filed a motion for a mistrial, alleging that the jury's verdict was based, at least in part, on consideration of materials not properly admitted into evidence at the trial. The trial court treated this as a post-trial motion and denied it on August 11, 1977. Plaintiff appeals.

Before reaching the merits of this appeal it is necessary to discuss certain procedural matters. After plaintiff filed her notice of appeal she moved in the trial court for certification of the transcripts of the post-trial

interviews with the jurors. On November 15, 1977, the trial court signed an order which included, *inter alia,* the following:

"IT IS ORDERED that the court declines to certify the record of sworn interrogation by judge of two jurors after verdict and prior to entry of judgment for the reason that said certification would serve to impeach the verdict of the jury.

IT IS FURTHER ORDERED that the original of the record of sworn interrogation by judge of two jurors after verdict and prior to judgment is to be removed from the Court's file and the Clerk's file stamp is stricken, they having been erroneously filed."

■■ We have agreed to consider a transcript of the interviews with the jurors together with the certified record and both parties have based their arguments on portions of this transcript. Certification of the record on appeal is not a jurisdictional requirement. When no prejudice is alleged concerning inaccuracies or omissions in the verbatim report of proceedings, we can, pursuant to Supreme Court Rule 329 (Ill. Rev. Stat. 1977, ch. 110A, par. 329), amend the record and treat it as having been properly certified. (*Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678.) Therefore, we believe it important to discuss the trial court's order of November 15, 1977.

■■ The Illinois Supreme Court Rules of Procedure indicate that the testimony of the jurors should have been certified as part of the record on appeal. Supreme Court Rules 323(a) and 323(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 323(a) and par. 323(b)) provide that:

"(a) Contents. A report of proceedings may include evidence, oral rulings of the trial judge, a brief statement of the trial judge of the reasons for his decision, and any other proceedings that the party submitting it desires to have incorporated in the record on appeal. *The report of proceedings shall include all the evidence pertinent to the issues on appeal.*

(b) Certification and Filing. A report of proceedings shall be submitted, upon notice, to the judge before whom the proceedings occurred or his successor * * * for his certificate of correctness, and shall be filed, duly certified in the trial court * * *." (Emphasis added.)

The issue on appeal is the alleged misconduct of the jury. Obviously the testimony of the jurors is "evidence pertinent" to this.

■■ Illinois case law also indicates that testimony of the jurors should have been certified as part of the proceedings. The facts which support a decree must be in the record on appeal. (*Yates v. Thompson* (1892), 44 Ill. App. 145.) The record should contain all matters relied upon by the trial court. (*Fitzgerald v. Van Buskirk* (1974), 16 Ill. App. 3d 348, 306 N.E.2d 76.) A trial judge cannot refuse to certify on the basis that the testimony

certified, although accurate, would tend to impeach the verdict. See *People ex rel. Crofut v. Gibbons* (1894), 54 Ill. App. 617.

■ Public policy also requires that any accurate transcript relating to a case which the parties wish to include in the record be sent to the reviewing court. The only questions the trial court may ask are whether the transcript is accurate and whether it relates to evidentiary matters of the case in question. He may not refuse to certify because he feels the testimony is irrelevant, and he should never ask the court reporter to remove an accurate account of proceedings from the record on appeal.

The trial court's actions in this case were not based on any reprehensible motive. However, an appellate court must be allowed to review the entire, unedited record, including its warts and blemishes. The trial court may honestly but incorrectly interpret what is relevant on appeal or an unethical trial judge could use his powers to delete evidence from the record on appeal to deny meaningful review of decisions. The only advantage in allowing such a procedure would be to keep the record free from irrelevant material. This is a very small benefit when weighed against the potential evils involved.

Fortunately, we have the relevant transcripts before us and can proceed to consider the appeal on its merits.

Despite differences in the testimony of the two jurors, Brookman and Van Cleave, certain facts are undisputed. The foreman of the jury, Mr. Brookman, made an independent visit to the intersection near which the accident occurred. There he made a diagram of that intersection which he brought to the jury room during the deliberations of the jury. Mr. Brookman also brought a copy of "Rules of the Road," an official booklet designed to instruct applicants for driver's licenses in Illinois, to the jury room where it was discussed by the jury during deliberations. Neither party maintains that Mr. Brookman's actions were proper. A jury should only consider the facts introduced into evidence during the trial and the law is given to it by the trial court judge. Each party should both have an opportunity to cross-examine adverse witnesses concerning their factual testimony and an opportunity to see and object to the instructions given by the judge.

Thus, the questions before us are (1) a threshold question of whether a jury verdict can be reversed on the basis of post-trial testimony by the jurors relating to impermissible investigations and evidence; (2) if a jury verdict can be reversed on the basis of such testimony, is the improper conduct of Mr. Brookman so serious as to warrant a reversal in this case?

The answer to both questions is in the affirmative. Therefore we reverse.

■ In *People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656, the Illinois Supreme Court resolved prior inconsistent rulings (*e.g., Sawyer v.*

*Stephenson* (1820), 1 Ill. (Breese) 24; *People v. Stacy* (1962), 25 Ill. 2d 258, 184 N.E.2d 866), by ruling that jurors' testimony could be used to impeach a verdict in certain cases. Testimony at Holmes' trial involved identification of the defendant's shoes with footprints left in the snow at the scene of the crime. Several members of the jury made an independent visit to a Florsheim shoe store to inspect the design on the logo on the heels of that type of shoe. The results of this investigation were discussed during the deliberations of the jury. In holding that subsequent testimony or affidavits from the jurors could be used to impeach the verdict, the court distinguished between testimony concerning the subjective mental processes of the jurors and testimony about improper external influences upon the jurors.

> "In the first category are those instances in which it is attempted to prove by a juror's testimony or affidavit the motive, method or process by which the jury reached its verdict. * * * The second category involves those situations in which the testimony or affidavit of a juror is offered as proof of conditions or events brought to the attention of the jury * * *." (*People v. Holmes* (1978), 69 Ill. 2d 507, 511-12, 372 N.E.2d 656, 658.)

This distinction or a similar one is made by most jurisdictions today. (See Annot., 32 A.L.R.3d 1356 (1970).) The court in *Holmes* quoted with approval the following reasoning of Mr. Justice Brennan, then serving on the Supreme Court of New Jersey, in *State v. Kociolek* (1955), 20 N.J. 92, 99-100, 118 A.2d 812, 816:

> "The better reasoned decisions support the exclusion of jurors' testimony as to their mental processes, not upon the discredited basis of the policies against self-stultification and avoidance of jury tampering, perjury or other fraudulent practices, but upon the sounder ground that, being personal to each juror, the working of the mind of any of them cannot be subjected to the test of other testimony, and therefore that such testimony should not be received to overthrow the verdict to which all assented. * * *

> Where, however, jurors' testimony goes, not to the motives or methods or processes by which they reached the verdict, but merely to the existence of conditions or the occurrence of events bearing on the verdict, that basis of policy does not exist, and this whether the condition happens or the event occurs in or outside of the jury room. Evidence of the actual effect of the extraneous matter upon jurors' minds can and should be excluded, as such evidence *implicates their mental processes*, but receiving their evidence as to the existence of the condition or the happening of the event, particularly when the consequences are governed

according to whether capacity for adverse prejudice inheres in the condition or event itself supplies evidence which can be put to the test of other testimony (and thus sound policy is satisfied) and at the same time the evidence can serve to avert, as here, a grave miscarriage of justice, which it is certainly the first duty of a court of conscience to prevent if at all possible." *People v. Holmes* (1978), 69 Ill. 2d 507, 512-13, 372 N.E.2d 656, 658-59.

■■ This reasoning is equally applicable to the instant case. Thus, the testimony of jurors Brookman and Van Cleave may be used as a basis for reversal.

*Holmes* also deals with the second question before us, whether the improper conduct here is so serious as to warrant a reversal. The supreme court noted in *Holmes* that there were many types of extraneous and unauthorized information and that not every instance of such information reached the jury and resulted in error so prejudicial as to require reversal.

Plaintiff relies heavily on the testimony of juror Van Cleave. He testified that the foreman's diagram of the intersection was passed to two other jurors and that the Rules of the Road book was examined and some of its provisions discussed at length. He felt that it may have had an effect on some of the other jurors.

Defendant relies more on Mr. Brookman's testimony. He testified that he never showed the other jurors the diagram and that Mr. Van Cleave was the one who brought up the question of what the Rules of the Road said. He stated that at one point in the deliberations, when Mr. Van Cleave was the lone dissenter, he (Van Cleave) began to argue on the basis of his memory of Rules of the Road. Brookman happened to have a copy of the booklet in his briefcase to study for his impending driver's test. He produced the booklet and showed Van Cleave that his interpretation was erroneous. He testified that only one other juror asked to see the Rules of the Road. Mr. Brookman felt that his production of the Rules of the Road allowed Mr. Van Cleave to gracefully change his mind despite his prior insistence that he would not do so.

Defendant also contends that the examined passages in Rules of the Road were in fact consistent with both the trial court's instructions and Illinois state law.

It is irrelevant which juror's testimony is correct. Neither the trial court nor this court need attempt to delve into the exact effect of unauthorized evidence on a particular juror. Here, even if Mr. Brookman's testimony were taken at face value, his production of Rules of the Road may well have affected Mr. Van Cleave's decision to change his mind. It is enough that the unauthorized evidence directly relates to issues in the case and may have improperly influenced the verdict. In

*Gertz v. Bass* (1965), 59 Ill. App. 2d 180, 185-86, 208 N.E.2d 113, 116, the First District Court of Appeals, quoting *Daniels v. Barker* (1938), 89 N.H. 416, 200 A. 410, reasoned as follows:

> "When incompetent evidence which may be prejudicial is received, the verdict is set aside, without proof that the jury gave it any weight in reaching the verdict. To require the losing party to prove actual prejudice would place a difficult and unjust burden on him. Error having been committed, in any event it must be shown to be harmless."

■■ This rule is a good one. It is not in conflict with the oft-cited rule of *People v. Mills* (1968), 40 Ill. 2d 4, 14, 237 N.E.2d 697, 703, that "a jury verdict will not be set aside where it is apparent that no injury or prejudice resulted from a communication to the jury either by the court or by third persons outside the presence of the defendant." Given the differences in the testimony of the jurors, and the lack of clarity as to exactly what sections of Rules of the Road were discussed, it is clear that defendant cannot show that "it is apparent that no injury or prejudice resulted."

For the foregoing reasons the trial court should have granted plaintiff's post-trial motion requesting a new trial. Therefore, we reverse the trial court's judgment and remand for a new trial.

Reversed and remanded.

RECHENMACHER and WOODWARD, JJ., concur.